United States District Court
Western District of Michigan.

| | |
|---|---|
| RICHMOND D. COLE, | )<br>)<br>) |
| Plaintiff, | ) Case No:<br>) |
| V. | )<br>) COMPLAINT |
| BENTELER AUTOMOTIVE CORPORATION, ("Benteler"); and CHUCK SANDEE | )<br>)<br>) Hon. Judge |
| Defendant, | )<br>)<br>)<br>)<br>)<br>) |

Plaintiff, Richmond D. Cole, ("Mr. Cole" or "Plaintiff"), through his attorneys, Smith Attorneys Group at Law P.C., now complains against the named defendants, and alleges as follows:

## I. NATURE OF THE ACTION

This matter being brought before the court for adjudication of various causes of action stemming from Defendants' discrimination against Mr. Richmond D. Cole, an African American man over the age of 40, who has experienced both harassment and discrimination at his former workplace and was wrongfully terminated from his employment. This was a result of Benteler not accommodating his request due to his mental illness and additionally, creating a hostile work environment and discriminatory actions as well as an altercation from his direct supervisor. At all times during the committed offenses, Mr. Cole has been a member of protected classes. As a result of Mr. Cole's ongoing requests for accommodations, assertions of his legal rights, and disparate treatment we bring this action pursuant to the Michigan The Whistleblowers' Protection Act, MCLA §37.2202, The Elliott-Larsen Civil Rights Act, The Persons with Disabilities Civil Rights Act, Family and Medical Leave Act of 1993 (FMLA), the Americans with Disabilities Act (ADA), and additional counts of both Assault and Battery, in which Benteler Corporation can be vicariously liable to an employee's actions.

## II. JURISDICTION AND VENUE

1) This court has proper jurisdiction to hear this matter pursuant to 28 U.S.C. §1331. The Court has supplemental jurisdiction over Plaintiff's State law claims pursuant to 28 U.S.C. §1367 (supplemental jurisdiction)

    because the claims relate to the issues and facts alleged in Plaintiff's federal claims.

2) Furthermore, venue is properly established within Kent County in accordance with 28 U.S.C. §1391 "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

Whereby all condition precedent to the filing of this action have been performed and met.

### III.   PARTIES

Plaintiff, RICHMOND D. COLE ("Cole" or "Mr. Cole" or "Plaintiff") is a natural person domiciled in the state of Michigan and a former employee of Defendant.

Defendant, BENTELER AUTOMOTIVE CORPORATION ("Benteler"or "Defendant") is a business in Grand Rapids, Michigan and the former employer of Plaintiff.

Defendant, CHUCH SANDEE ("Chuck" or "Mr. Sandee" or "Defendant") is a natural person domiciled in the state of Michigan and a agent of Benteler Automotive

### IV.   STATEMENT OF FACTS

1) Plaintiff, Mr. Cole was terminated in September of 2022, after being on a medical leave of absence having been diagnosed with anxiety disorder and major depression resulting from his discriminatory treatment while employed at Benteler..

2) Cole first became an employee of Benteler Automotive Corporation in October of 2019, as a full-time employee, during second shift in the position of a Drexel hi lo driver.

3) At first, Mr. Cole held the position of high-lo driver within the warehouse until he was suddenly demoted after filing a MiOsha claim regarding unsafe working conditions. His position then until his termination was to work a unfamiliar machine, the "Core Steel press",  under the title of "Machine Operator". Both of these positions were under Supervisor, Chuck Sandee.

4) Chuck Sandee is/was an employee of Benteler and was Mr. Cole's direct superior.

5) During his employment at Benteler, Mr. Cole has received negative performance evaluations and has had other complaints of questioning Benteler's safety in operations, however, all of these have been resolved and unreported in the past and none were deemed a problem until after he filed the MiOsha complaint.

6) In addition, between filing his complaint and his termination, Cole has not utilized any other leave of absence other than the mandatory one he was required to take during his employment with Benteler, for anxiety or otherwise.

7) Cole reported his concerns of unsafe conditions in the warehouse to HR several times. As a result of said reporting he was treated and evaluated differently than other similarly situated persons. Additionally, he states that several management leaders constantly gossiped about him behind his back and called him names.

8) On Friday, March 26, 2021, Mr. Cole complained to his lead Pam Moore, to report unsafe activity occurring within the warehouse.

9) More specifically, the unsafe activity was that the side shifter on the Drexel hi lo that Mr. Cole drove wasn't functioning right and that he was at maintenance getting it looked at.

10) Maintenance found a big chunk of metal, which was believed to be causing the problems with the hi lo.

11) Mr. Cole finished the night and assumed it was locked out over the weekend for repair like Carl, in maintenance, said it would be.

12) Mr. Cole then worked the Monday, but was not asked to drive the Hi lo again until that Tuesday, March 30, 2021, following the incident. In the morning meeting, he was told by Jeff, his first shift lead, that the Drexel side shift was broken; it didn't work at all.

13) Mr. Cole informed Jeff that he didn't feel safe or comfortable driving the Hi lo at that point, as it was broken. He and a coworker, David, who he switched with for a bit, both reported feeling uncomfortable driving the machine in that condition.

14) On March 31, 2021, in the morning meeting, Jeff informed he and the other second shift hi lo drivers that the side shifter was still broken on his Drexel and the chain was broken as well.

15) Once again, feeling unsafe, Mr. Cole stated he was uncomfortable driving it in that condition. Jeff told him that he either drive it or Chuck, his superior supervisor stated that he could go to HR and talk about it along with taking a point against himself and going home for the day.

16) Mr. Cole said he would go to HR and take the point before heading home.

17) When he went to HR, the door to HR was locked and he was told a message would be relayed to Robert Rushing (another higher up, for HR). He was directed to come back the next day and go home, as Robert was in a two-hour conference call.

18) The next day, on April 1, 2021, Chuck Sandee called Mr. Cole into the HR office and gave him a write-up for insubordination as he left the building and left work.

3

They tried to state that he was refusing to work, when he was just following the directions told to him the day prior.

19) They asked Mr. Cole to sign the write up. Mr. Cole said "No" as it was an inaccurate account as to what had happened.

20) The following day, April 2, 2021, Mr. Cole went into to Mr. Robert Rushing's office to let him know that he had filed a MiOsha safety complaint.

21) On April 7, 2021, he got another write up from HR even though he had coverage in the warehouse when he did so and had safety there.

22) No HR signature was on this specific write up, which it should have per company policy. Mr. Cole signed this write up, however, he obtained a copy of it as he did not agree to it and was told by his superior that him signing it only meant that he was acknowledging that he had received it, not that he was admitting to doing anything wrong.

23) Since the filing of the MiOsha complaint, Mr. Cole has experienced micro-aggressions, name calling, and disparate treatment from Chuck Sandee and other higher ups in the company brought up herein.

24) This includes an email from Corey Stringer, Director of Legal affairs, that was sent to Robert Rushing and Chuck Sandee after Mr. Cole filed the complaint, stating " Our goal is to let this guy go. How do we get there?"

25) To Mr. Cole's knowledge, no other employee in his department was written up while following orders of higher ups, taking a leave, or from reporting unsafely in the warehouse.

26) Mr. Cole endured months of disparate and hostile treatment before he was pushed to the point of having to take involuntary medical leave, as required by the Defendant, Benteler.

27) In October of 2021, Mr. Cole had another negative performance review which he did not agree with.

28) Things got heated when Mr. Chuck Sandee told Mr. Cole to leave his office. At this point, Mr. Sandee handled Mr. Cole out the door.

29) Mr. Sandee denies this, stating that he ushered him out. However, we have documentation of the incident and Mr. Cole states that Mr. Sandee assaulted him, forcing him out of his office by putting his hands on him.

30) No charges have been pressed following this incident, however, Mr. Cole wishes to now pursue this.

31) After this incident, Mr. Cole was demoted from Drexel hi lo driver to Machine Operator in February 2022.

32) Following his demotion after some time, Mr. Cole again stated that he felt unsafe while operating his new machine, the CoreSteel Press. Cole stated that he could not run the machine.

33) At this time, Benteler gave Mr. Cole an involuntary medical leave of absence, stating that Cole should seek a medical request for accommodation.

34) On February 23, 2022, Mr. Cole submitted a medical provider note indicating that Mr. Cole may not stand more than 30 minutes at a time without being able to sit for 5-19 minutes and that Mr. Cole not place any extremities (hands feet, arms, legs , etc.) in machinery. Mr. Cole further indicated by text message on February 23, 2022, that he would be seen by a nurse practitioner on March 14, 2022, for a mental evaluation.

35) Following review and analysis of the restrictions presented in the February 23 doctor's note, Benteler stated that "it regrets that it is not aware of any positions at the Hagen plant where an employee can be guaranteed to sit for 5-10 minutes every thirty minutes. As you are aware, there are no chairs on the plant floor, and putting a chair on the floor would create a serious safety risk. Even forklift drivers, who do sit at times when driving equipment, are not guaranteed to be seated for 5-10 minutes out of every 30 minute interval. The restrictions as written impose an undue hardship on Benteler, and Benteler cannot accommodate it. In the interim, we will continue to place you on an unpaid leave of absence pending modification of your restrictions or further discussion.

36) After this statement, Mr. Cole was told by HR Billie Welch that he was to be off until this note was to be reviewed. Additionally, this was an unpaid leave (Mr. Cole thought it was paid as he was told to call Guardian in order to be paid while he was off). This is referenced by both emails and a recording.

37) Thus, Benteler failed to properly plan and execute an accommodation for working, despite Cole stating that Benteler has ways it could accommodate him, which allowed Benteler higher ups to disguise their increased discrimination and hostility towards Mr. Cole as managerial oversight.

38) All of Mr. Coles' involuntary leave was not made optional to Mr. Cole and made unaware to him that it would be unpaid.

39) Benteler exclusively relied on the report from Mr. Cole's doctor and refused to make an accommodation, even after said Doctor produced documentation stating that Mr. Cole's treatment plan required him to be accommodated.

40) Mr. Cole's condition continued to decline, due to now lack of any income, job insecurity, and no accommodation provided to him by Benteler.

41) On or about September of 2022, Mr. Cole was terminated by Benteler due to his lack of accommodation by the company.

42) This was done via email from HR and was "let go" due to no position open in the company which accommodated his request.

43) Following the firing, Mr. Cole sought out an attorney, Mr. Te Smith, in order to pursue this matter.

44) He has since struggled with child support payments due to the unexpected loss of income and almost went to jail due to such. His anxiety and depression have also worsened due to the unexpected loss of job as well, as his job was what supported both he and his family.

45) We now bring this suit as a result of Defendants' discriminatory action.

## V. CLAIMS FOR RELIEF

### FIRST COUNT
### The Whistleblowers' Protection Act (WPA)
### "Act 469 of 1980"
*(Pled against the defendant)*

1. Plaintiff repeats and re-alleges all allegations set forth in the preceding paragraphs as if fully set forth herein.

2. Michigan's Whistleblowers' Protection Act (WPA) shields employees from termination for protected activities related to reporting illegal conduct by an employer.

3. "Protected activities" include reporting situations at work where they reasonably believe their employer is in violation of a law, rule, or regulation or participating in an investigation of potentially illegal activity.

4. On April 2, 2021, Mr. Cole filed a MiOSHA complaint with the state of Michigan.

5. Shortly after filing the complaint with MiOSHA, Mr. Cole was demoted from his then current position and his pay was reduced.

6. In September of 2022, Mr. Cole was terminated from employment as a result of multiple reports of mistreatment, discrimination, the filing of a MiOSHA complaint and his request for accommodation for his mental illness following the involuntary leave as forced by Benteler upper management.

7. Defendants continuously mistreated and wrote up Mr. Cole in order to draft a narrative consistent and in support of the Benteler's action to wrongfully terminate Mr. Cole, in an effort to shield the business from Whistleblowers' action.

8. Defendants violated state and federal statutes enacted to shields employees from termination for protected activities related to reporting illegal conduct by an employer.

9. Mr. Cole participated in "protected activities" by reporting his experience of discrimination up the policy chain to Benteler, informing them of his reasonable belief that Defendants did violate the law as well as safety standards, Benteler rules, and regulations.

10. Defendants failed to follow and properly act in conformity with its anti-discrimination policies and safety standards, by using the plaintiff's mental illness as a shield from legal liability.

11. Defendants failed to provide any due process or appeal or reconsideration of Benteler's decision to terminate Mr. Cole nor did they provide any reasonable accommodation to him prior to that firing.

WHEREFORE, Defendant engaged in tortious and outrageous conduct toward plaintiff which resulted in compensatory and exemplary damages including back pay, front pay, bonuses, loss of benefits and retirement contributions, out of pocket expenses, etc., and. Whereby Plaintiff demands that judgment be entered against defendant in an amount commensurate with the losses sustained by the plaintiff, including compensatory and punitive damages; that interest, court costs and attorney fees be awarded; and any other relief deemed just and equitable be granted.

SECOND COUNT
Elliott-Larsen Civil Rights Act (ELCRA)
"Hostile Work Environment"

12. Plaintiff repeats and re-alleges all allegations set forth in the preceding paragraphs as if fully set forth herein.

13. Mr. Cole is an African American formerly employed by Benteler Automotive Corporation.

14. Defendants subjected Mr. Cole to communication and conduct on the basis of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status, which substantially interfered with his employment or created an intimidating, hostile, or offensive work environment; and respondeat superior.

15. Mr. Cole filed his complaint of discrimination with the EEOC on July 20, 2022

16. In September of 2022, Mr. Cole was terminated from employment during an ongoing time period following his MiOsha complaint against Benteler

    including his charges of discrimination and safety standards not being met.

17. Benteler failed to properly plan and execute a work accommodation policy or position, which allowed several higher ups to disguise their increased discrimination and hostility towards Mr. Cole during his term of employment.

18. As a result, Mr. Coles' work performance and health began to rapidly decline, and he felt unsafe in the workplace.

19. HR and his head supervisors required Mr. Cole to take an unpaid involuntary leave of absence. This is a practice which was solely enforced against Mr. Cole and no accommodation was made.

20. During the time where Mr. Cole reported his mental illness, HR informed Cole that he could not use paid time off and could not report to work, even though he was told prior it was a paid time off (as he should report to Guardian for pay) and he had no say in taking said leave.

21. Defendants made no accommodation for Mr. Cole's mental illness as a tactic to draft a narrative consistent and in support of Benteler's action to wrongfully terminate Mr. Cole.

22. Defendants violated state and federal statute enacted to shields employees from termination for protected activities related to reporting illegal conduct by an employer.

23. This is further referenced by an email which was sent early on post his filing of the MiOsha complaint by Corey Stringer, Director of Legal affairs, that was sent to Robert Rushing and Chuck Sandee after Mr. Cole filed the complaint, stating "Our goal is to let this guy go. How do we get there?"

24. Mr. Cole participated in "protected activities" by reporting to MiOSHA his reasonably belief that Defendants did violate the law, company rules, regulations, safety measures, resulted in his termination.

25. Defendants failed to provide any due process or application for appeal or reconsideration of the company's decision to terminate Mr. Cole.

WHEREFORE, Defendant engaged in tortious and outrageous conduct toward plaintiff which resulted in compensatory and exemplary damages including back pay, front pay, bonuses, loss of benefits and retirement contributions, out of pocket expenses, etc., and. Whereby Plaintiff demands that judgment be entered against defendants in an amount commensurate with the losses sustained by the plaintiff, including compensatory and punitive damages; that interest, court costs and attorney fees be awarded; and any other relief deemed just and equitable be granted.

THIRD COUNT
Americans with Disabilities Act (ADA)
"Reasonable Accommodation"

26. Plaintiff repeats and re-alleges all allegations set forth in the preceding paragraphs as if fully set forth herein.

27. The law requires an employer to provide reasonable accommodations to employees and job applicants with a disability, unless doing so would cause significant difficulty or expense for the employer. An employer must provide a reasonable accommodation (such as leave or modifications that enable an employee to perform their job) for mental disabilities, absent undue hardship (significant difficulty or expense).

28. In September of 2022, Mr. Cole was terminated while under his physician's care for mental illness, post filing a MiOsha complaint after his involuntary leave as a result of his disability.

29. Defendant failed to provide Mr. Cole with reasonable accommodation short of termination even after having knowledge of his disability and requirements.

30. In February of 2022, Mr. Cole's doctor stated he struggled with anxiety and deep depression triggered by his discrimination, demotion, related work stress and hostile environment.

31. Defendant Benteler had actual knowledge of the doctor's detailed treatment plan for Mr. Cole.

32. Defendant did not provide accommodations for Mr. Cole after knowing that these accommodations were a necessity.

33. Defendant forced Mr. Cole to take an extended and sudden unpaid leave, which he was also told would be paid and was provided misleading instructions how he could do so.

34. Defendant did not offer nor provide any alternative accommodation for Mr. Cole's disability, instead they terminated his employment and stripped him of all medical benefits and pay necessary for his well-being.

WHEREFORE, Defendants engaged in tortious and outrageous conduct toward plaintiff which resulted in compensatory and exemplary damages including back pay, front pay, bonuses, loss of benefits and retirement contributions, out of pocket expenses, etc., and. Whereby Plaintiff demands that judgment be entered against defendants in an amount commensurate with the losses sustained by the plaintiff, including compensatory and punitive damages; that interest, court costs and attorney fees be awarded; and any other relief deemed just and equitable be granted.

FOURTH COUNT
Family and Medical Leave Act of 1993 (FMLA)
29 U.S.C. 2601 et seq.
"Work leave for illness and/or related medical conditions"

35. Plaintiff repeats and re-alleges all allegations set forth in the preceding paragraphs as if fully set forth herein.

36. FMLA entitles eligible employees of covered employers to take unpaid, job-protected leave for specified family and medical reasons with continuation of group health insurance coverage under the same terms and conditions as if the employee had not taken leave.

37. Under the defendant's employee handbook, Mr. Cole was entitled to protections and leave under the Family and Medical Leave Act as enforced by Benteler Automotive.

38. This court has jurisdiction pursuant to 28 U.S.C. 1331.

39. Plaintiff is an eligible employee as defined by the FMLA.

40. Defendant is an employer as defined by the FMLA.

41. In failing to implement accommodations for his mental illness, keep to regulated safety standards required by the factory, and other applicable policies, Defendants violated Plaintiff's rights under the FMLA, 29 U.S.C. 2601 et seq. as it relates to equivalent employment benefits, other terms and conditions of employment as a result of Mr. Cole being denied accommodation for himself , having suffered from anxiety and depression.

42. The statute requires that an employer give the employee at least 15 calendar days to provide an employer with a complete and sufficient medical certification. Mr. Cole provided such to Defendants, which they ignored, failed to process, and wrongfully rejected an accommodation as needed with no legal basis.

43. The U.S. Department of Labor in conjunction with the FMLA, provides that if the employer has received a complete and sufficient certification but has a reason to doubt that it is valid, the employer may require the employee to obtain a second medical certification. The employer can choose the health care provider to provide the second opinion, but "generally may not select a health care provider who it employs on a regular or routine basis."

44. Defendant Benteler did not elect to do so.

45. Instead, Mr. Cole was terminated for requesting accommodation as recommended by his doctor due to his mental illness and disparate treatment.

46. In September of 2022, Mr. Cole was terminated while under his physician's care.

47. In failing to give Plaintiff an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment, Defendant violated Plaintiff's rights under the Family Medical Leave Act, 29 U.S.C. 2601 et seq.

48. Plaintiff was denied the accommodations as needed stated herein, after providing the appropriate medical documentation to upper management of his mental disability.

49. As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, benefits, ability to pay his monthly child support, loss of employment opportunities, and endured amplified mental distress.

i. **RETALIATION**

50. Defendant owed a duty to the Plaintiff pursuant to the Anti-Retaliation provisions of the Family Medical Leave Act not to retaliate against the Plaintiff for requesting medical leave.

51. By discharging the Plaintiff and retaliating against the Plaintiff contrary to the Family Medical Leave Act, the Defendant violated this act in the following particulars:

    a. Not recognizing Plaintiff's mental disability as a serious health condition.

    b. Retaliating against the Plaintiff for exercising his Family Medical Leave right protections.

52. As a direct and approximate result of the Defendant's violations of the Family Medical Leave Act, the Plaintiff suffered damages in the following particulars:

    a. Loss of employment with the Defendant

    b. Lost wages.

    c. Loss of Employment Benefits, such as pension and profit sharing, 401k, insurance benefit, bonuses and other economic benefits that Plaintiff has suffered as a result of his illegal discharge.

    d. Ability to pay his monthly child support obligations for his son.

53. Defendant voluntarily refused to accommodate Mr. Cole and fabricated a basis to terminate him despite his disability, medical conditions, and protections from FMLA.

54. Defendant failed to provide any due process or application for appeal or reconsideration of Benteler's decision to terminate him.

WHEREFORE, Defendant engaged in tortious and outrageous conduct toward plaintiff which resulted in compensatory and exemplary damages including back pay, front pay, bonuses, loss of benefits and retirement contributions, out of pocket expenses, etc., and. Whereby Plaintiff demands that judgment be entered against defendants in an amount commensurate with the losses sustained by the plaintiff, including compensatory and punitive damages; that interest, court costs and attorney fees be awarded; and any other relief deemed just and equitable be granted.

FIFTH COUNT
INTENTIONAL TORT
"ASSAULT"

55. Plaintiff repeats and re-alleges all allegations set forth in the preceding paragraphs as if fully set forth herein.

56. A person who assaults or assaults and batters an individual, if no other punishment is prescribed by law, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

57. Michigan tort law recognizes the intentional tort of assault.

58. Assault is a threat of harmful contact, and a battery is the culmination of that threat. More specifically, assault is defined as any intentional, unlawful threat or offer to do bodily injury to another by force, under circumstances that create a well-founded fear of imminent peril, coupled with the apparent present ability to carry out the act if not prevented.

59. Additionally, under Vicarious Liability, in which an employer can be held responsible for the torts of an employee. One type of Vicarious Liability in respondent superior.

60. When *respondeat superior* applies, an employer will be liable for an employee's negligent actions or omissions that occur during the course and scope of the employee's employment.

61. Mr. Chuck Sandee is/was an employee of Benteler Corporation at the time of the assault against Mr. Cole.

62. Mr Sandee was also Mr. Cole's former supervisor.

63. In October of 2021, Mr. Cole had another negative performance review which he did not agree with. This followed his filing of the MiOsha complaint along with other discrimination by the workplace.

64. Mr. Chuck Sandee told Mr. Cole to leave his office. At this point, Mr. Sandee displayed physical gestures towards Mr. Cole which placed him in fear and apprehension of an immediate battery.

65. Mr. Sandee denies this, stating that he ushered him out. However, we have documentation of the incident and Mr. Cole states that Mr. Sandee assaulted him, forcing him out of his office by putting his hands on him.

66. Mr. Cole has taken action to pursue criminal charges against Mr. Sandee.

67. Assault is defined as the intentional act by one person that creates an apprehension in another of an imminent harmful or offensive contact.

68. Here, it is stated that the Plaintiff had Mr. Sandee's hands on him, satisfying the requirement of imminent harmful or offensive contact.

69. This is a low burden to satisfy, and as such is satisfied here.

70. Benteler has created an environment whereby mental, emotional, and physical abuse against Mr. Cole was tolerated and in-fact encouraged.

71. Thus, through vicarious liability, Benteler Corporation, "The employer" is liable for Mr. Sandee's actions, "the employee" herein.

WHEREFORE, Defendant engaged in tortious and outrageous conduct toward plaintiff which resulted in compensatory and exemplary damages including back pay, front pay, bonuses, loss of benefits and retirement contributions, out of pocket expenses, etc, and. Whereby Plaintiff demands that judgment be entered against defendants in an amount commensurate with the losses sustained by the plaintiff, including compensatory and punitive damages; that interest, court costs and attorney fees be awarded; and any other relief deemed just and equitable be granted.

SIXTH COUNT
INTENTIONAL TORT
"BATTERY"

72. Plaintiff repeats and re-alleges all allegations set forth in the preceding paragraphs as if fully set forth herein.

73. Benteler has created an environment whereby mental, emotional, and physical abuse against Mr. Cole was tolerated and in-fact encouraged.

74. Additionally, under Vicarious Liability, in which an employer can be held responsible for the torts of an employee. One type of Vicarious Liability in respondent superior.

75. When *respondeat superior* applies, an employer will be liable for an employee's negligent actions or omissions that occur during the course and scope of the employee's employment.

76. Mr. Chuck Sandee is/was an employee of Benteler Corporation. As well as Mr. Cole's former supervisor.

77. Battery is defined as a forceful, violent or offensive touching of the person or something closely connected with the person of another.

78. Mr. Chuck Sandee told Mr. Cole to leave his office. At this point, Mr. Sandee physical struck and force Mr. Cole outside of a office space.

79. Mr. Cole had Mr. Sandee's hands on him, satisfying the requirement of a forceful, violent or offensive touching of the person.

80. This is a low burden to satisfy, and as such, is satisfied here.

81. Thus, through vicarious liability, Benteler Corporation, "The employer" may be liable for Mr. Sandee's actions, "the employee" herein.

WHEREFORE, Defendant engaged in tortious and outrageous conduct toward plaintiff which resulted in compensatory and exemplary damages including back pay, front pay, bonuses, loss of benefits and retirement contributions, out of pocket expenses, etc, and. Whereby Plaintiff demands that judgment be entered against defendants in an amount commensurate with the losses sustained by the plaintiff, including compensatory and punitive damages; that interest, court costs and attorney fees be awarded; and any other relief deemed just and equitable be granted.

## VI.     JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VII.    PRAY FOR RELIEF

WHEREFORE, Mr. Cole respectfully requests that this Court award him:
a. A final judgment against the Defendants for violation of the above stated counts;
b. Compensatory damages;
c. Punitive damages;
d. Treble damages;
e. Pre-judgment and post-judgment interest on the above damages;
f. Attorney's fees, costs and litigation expenses; and
g. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: /s/Te D. Smith
Te D. Smith (NJ229812017)
Smith Attorneys Group at Law P.C.
July 14, 2023

CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all counsel of record.

/s/Te D. Smith
Te D. Smith, Esq.
Smith Attorneys Group at Law P.C.
332 S. Michigan Ave. Ste. 121 #5023
Chicago, IL 60604
(708) 320-3337
tsmith@saglawpc.com

VERIFICATION

I, Richmond D. Cole, under penalties provided by law pursuant to Rule 11 of the Federal Rules of Civil Procedure, hereby certify that I have read the foregoing Verified Complaint; that the factual statements set forth in this Verified Complaint are true and correct, except for those alleged on information and belief; and that I am informed, and I believe that the facts alleged on information and belief are also true.

/s/Richmond D. Cole
Richmond D. Cole, *Plaintiff*

Dated: July 14, 2023